# Commonwealth v. Williams

*Jonathan H. Kurland,* for Commonwealth.
*Amy Shaffer,* for defendant.

SPRECHER, *J.,* January 16, 2008—On February 9, 2005, a complaint was filed charging the defendant, Wayne Patrick Williams, with criminal attempt to commit murder of the first degree, aggravated assault, arson, causing or risking catastrophe, possessing instruments of crime, recklessly endangering another person and terroristic threats. The defendant filed an omnibus pretrial motion seeking suppression of statements and habeas corpus relief. On May 1, 2007, this court issued an order granting in part and denying in part Mr. Williams' motion to suppress and granting his motion for habeas corpus. The Commonwealth appeals from this court's order.

## STATEMENT OF FACTS

On May 1, 2007, this court issued the following findings of fact in disposition of Mr. Williams' motion to suppress:

### *Findings of Fact*

(1) On February 9, 2005, Ms. Crystal Green was admitted for treatment for severe burns at the emergency room of St. Joseph's Hospital in the City of Reading,

Berks County, Pennsylvania at 6:50 a.m. She told her treating physician that gasoline was thrown on her and was ignited.

(2) At approximately 6:56 a.m., a report came in to the dispatch center of the Reading Police Department from St. Joseph's Hospital in the City of Reading, Berks County, Pennsylvania. The report indicated a female burn victim was receiving treatment in the emergency room and that there was an individual acting suspiciously outside the emergency room.

(3) Officer Suydam took the report and departed for St. Joseph's Hospital in Reading arriving in his patrol car at approximately 7:20 a.m.

(4) A security guard directed the officer to go to the intersection of Twelfth and Walnut Streets in the City of Reading where another security guard advised that the person who was acting in a suspicious manner had walked into an adjacent city park and was wearing a black coat and a gray sweatshirt. The security guard, within eyesight of this person, pointed him out to Officer Suydam.

(5) Officer Suydam approached the person the security guard had identified (defendant). The defendant spoke first saying "I guess you are here for me."

(6) During their conversation, the defendant indicated the burn victim was his girlfriend. Officer Suydam then asked the defendant how his girlfriend had been burned. The defendant stated that she was in the kitchen of the apartment building they shared at 1341 North Tenth Street in Reading and that she had gotten too close to the stove and that her clothes must have caught on fire. At

this point, Officer Suydam had not spoken to any medical personnel or any other officers investigating the incident.

(7) Officer Suydam noticed bums on the defendant's hands and that he was visibly upset. Based upon these observations, he advised the defendant that he was being taken into investigatory detention for the stated reasons that the officer was suspicious a crime may have occurred and had not yet spoken to the victim.

(8) Officer Suydam informed the defendant that he would be taken to city hall to speak with a detective. He was told that he was not under arrest and *Miranda* warnings were not read at this point. Officer Suydam informed him that only a patrol wagon was available to transport him and departmental policy dictated that he must be handcuffed and seat belted to be transported in the wagon. Officer Mosley transported the defendant to city hall in the patrol wagon at approximately 7:40 a.m. while Officer Suydam proceeded to the emergency room and began to speak with Ms. Green.

(9) Criminal Investigator Parker (C.I. Parker) of the Reading Police Department took over for Officer Suydam in speaking with Ms. Green at approximately 8 a.m. C.I. Parker observed that she was crying, shivering, cringing, and flinching as they spoke. She observed that Ms. Green appeared to be going into shock because her shivering became more frequent as they spoke. She told C.I. Parker she had been in an argument with the defendant at the apartment building where they both lived. The argument concerned the defendant getting another woman pregnant and Ms. Green telling the defendant

that she wanted to end their relationship for that reason. Ms. Green told C.I. Parker that in response, the defendant told her that he was going to kill her so that no one would have her. According to Ms. Green, the defendant then poured gasoline on her and lit her on fire with a lighter.

(10) Officer Ziemba, an evidence technician with the Reading Police Department, arrived at the hospital to perform evidence collection duties at approximately 8 a.m. and received the clothes that Ms. Green had been wearing which were removed pursuant to her treatment. He testified that these clothes smelled of gasoline.

(11) Criminal Investigator Rambo (C.I. Rambo) of the Reading Police Department later took a statement from the defendant at city hall beginning at approximately 9 a.m. with Sergeant Solecki of the Reading Police Department also present. C.I. Rambo provided the defendant with *Miranda* warnings before taking his statement. The defendant told C.I. Rambo that he and Ms. Green had argued. He told C.I. Rambo that he then started to leave the premises when he saw a gas can in the public hall of the apartment building. The defendant stated that he took the gas can, doused Ms. Green with gasoline from it, and lit her on fire.

(12) Subsequently, Ms. Green died from unrelated causes.

## ISSUES

The Commonwealth's statement of matters complained of, filed pursuant to Pennsylvania Rule of Appellate Procedure 1925(b), raises five issues:

(1) Whether this court erred and abused its discretion in finding that an excited utterance made by the victim was inadmissible hearsay.

(2) Whether this court erred in suppressing the defendant's initial statement to Officer Suydam ("I guess you're here for me") when the statement was a spontaneous utterance during a mere encounter.

(3) Whether this court erred in suppressing the defendant's subsequent statements to Officer Suydam.

(4) Whether this court erred in suppressing the defendant's statements to Criminal Investigator Rambo.

(5) Whether, based, in part, on (sic) its accumulated legal errors, this court committed an abuse of discretion when it granted the defendant's request for habeas corpus relief.

## DISCUSSION

### I. Ms. Green's Statements to Officers at the Hospital.

The Commonwealth first alleges that this court erred and abused its discretion in finding that an excited utterance made by Ms. Green was inadmissible hearsay. The Commonwealth apparently refers to the statements made by Ms. Green at the hospital to Officer Suydam and Criminal Investigator (C.I.) Parker of the Reading Police indicating the defendant was culpable for her injuries. Ms. Green made these statements to the officers at the hospital at approximately 8 a.m. on February 9, 2007. In her statements, Ms. Green said that the defendant had poured gasoline on her and ignited her with a lighter. Ms. Green made the statement in response to questioning by Officer Suydam and C.I. Parker.

Hearsay is in-court evidence of an out-of-court written or oral declaration that is offered to show the truth of the out-of-court assertion. Pa.R.E. 801(3); *Woodard v. Chatterjee,* 827 A.2d 433, 444 (Pa. Super. 2003). Hearsay is generally inadmissible at trial unless it falls within an exception to the rule prohibiting its admission. Pa.R.E. 802; *Commonwealth v. Carter,* 861 A.2d 957 (Pa. Super. 2004).

Ms. Green's statement is hearsay because she made it out-of-court and the Commonwealth would proffer it to buttress its allegation that the defendant burned Ms. Green and is guilty of the charges filed against him. Thus the statement would be inadmissible unless an exception to the hearsay rule is applicable.

An excited utterance is an exception to the hearsay rule under the Pennsylvania Rules of Evidence. An excited utterance is "a statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." Pa.R.E. 803(2). The Pennsylvania Supreme Court has defined an excited utterance as

"[A] spontaneous declaration by a person whose mind has been suddenly made subject to an overpowering emotion caused by some unexpected and shocking occurrence, which that person has just participated in or closely witnessed, and made in reference to some phase of that occurrence which he perceived, and this declaration must be made so near the occurrence both in time and place as to exclude the likelihood of its having emanated in whole or in part from his reflective faculties." *Commonwealth v. Stallworth,* 566 Pa. 349, 366,

781 A.2d 110, 119-20 (2001) (quoting *Commonwealth v. Stokes*, 532 Pa. 242, 258, 615 A.2d 704, 712 (1992)).

There is no specific rule as to the length of time elapsed from the incident in which a statement can qualify as an excited utterance and the determination of excited utterances is a fact-specific and case-by-case determination. *Commonwealth v. Boczkowski*, 577 Pa. 421, 456, 846 A.2d 75, 95-96 (2004). (citation omitted)

This court concluded Ms. Green's statement was an excited utterance. Although it was not spontaneous but instead in response to police questioning, the fact that Ms. Green made the statement while experiencing extreme shock as a result of her burns, as evidenced by her physical symptoms, weighed heavily in this court's determination. Officer Suydam and C.I. Parker testified that, while they spoke to Ms. Green, she appeared to be in shock and was shaking, shivering, and wincing from the pain of her burns. Statements made while the declarant is still in pain from an incident are admissible as excited utterances because the declarant's "attention [is] focused on [her] pain and not on the circumstances surrounding the accident," so that the statement is not a product of the declarant's reflective processes. *Commonwealth v. Blackwell*, 343 Pa. Super. 201, 214, 494 A.2d 426, 433 (1985) (quoting *Thompson v. City of Philadelphia*, 222 Pa. Super. 417, 420-21, 294 A.2d 826, 828 (1972)).

In *Blackwell*, the Pennsylvania Superior Court held that a victim's statements to a police officer, made one-half hour to 45 minutes after he was kidnapped and robbed at gunpoint was an excited utterance because it

was a spontaneous reaction to a startling event. Even though the statements were made in response to police questioning, the court held they were free of reflection and thus admissible as excited utterances. *Blackwell,* 343 Pa. Super. at 222, 494 A.2d at 437. Similarly, in *Thompson,* the Superior Court held that statements of an accident victim as to fault for his injuries made to a police officer while the victim was receiving treatment at the hospital one hour after the accident were admissible as excited utterances. According to the court "[i]f the decedent was so much in pain that his attention was focused on his pain and not on the circumstances surrounding the accident, *this statement as to those circumstances* cannot be said to be 'shrewd and self-calculating.'" *Blackwell,* 343 Pa. Super. at 214, 494 A.2d at 433, quoting *Thompson,* 222 Pa. Super. at 420, 294 A.2d at 828. (emphasis in original)

Akin to *Blackwell,* the statements here were made in response to police questioning about one hour to one hour-and-fifteen minutes after a shocking event in which the declarant was the victim. This court concludes that Ms. Green's statements were also free of reflection. *Blackwell,* 343 Pa. Super. at 222, 494 A.2d at 437. Ms. Green's statements were made under similar circumstances to the victim in *Thompson,* because she made them in response to police questions while receiving treatment at the hospital about one hour after she was injured. Ms. Green was in such extreme pain at the time of her statement that she was focused on that pain instead of reflecting on her answers to police questions. *Id.* at 214, 494 A.2d at 433. Accordingly, the statement was an excited utterance.

However, having found the statements admissible as excited utterances, this court concluded that it was barred by the United States Constitution. Out-of-court statements by witnesses that are testimonial are barred, under the Confrontation Clause of the Sixth Amendment of the United States Constitution, unless the witness is unavailable and the defendant had a prior opportunity to cross-examine the witness. *Crawford v. Washington,* 541 U.S. 36 (2004); *Commonwealth v. Gray,* 867 A.2d 560, 573-74 (Pa. Super. 2005). Statements that are the result of "formal, structured police interrogation" are testimonial. *Gray,* 867 A.2d at 577. A statement may be both an excited utterance and a testimonial statement. *Id.* at 576.

Ms. Green's statements to Officer Suydam and C.I. Parker, while admissible as excited utterances, are testimonial because they were the result of formal police questioning. *Id.* at 577. Ms. Green is deceased and thus unavailable and was never cross-examined regarding her testimonial statements to members of the Reading Police. Accordingly, these statements are barred by the Confrontation Clause. *Crawford, supra; Gray, supra.*

For these reasons this court did not err nor commit an abuse of discretion. Accordingly, the Commonwealth's first claim must fail.

II. Defendant's Initial Statement to Officer Suydam.

The Commonwealth's second error complained of is that this court erred in suppressing the defendant's initial statement to Officer Suydam ("I guess you're here for me") when the statement was a spontaneous utterance during a mere encounter.

This court did not expressly suppress this particular declaration. This court's order of May 1, 2007 stated that "Defendant's motion to suppress his *statement* to Reading Police is granted." [1] This order addressed Count Two of defendant's omnibus pretrial motion which referred only to the defendant's statement to C.I. Rambo made at the police station two-and-a-half to three hours after the defendant was taken into custody.[2]

Instead, this court concluded that this declaration, along with Officer Suydam's observations of the defendant and the information then available to him, did not establish a crime had been committed or justify a reasonable suspicion that the defendant had committed a crime. (Findings of fact and conclusions of law, May 1, 2007, at 8, ¶18.) Moreover, they did not give Officer Suydam and the Reading Police probable cause to justify arresting the defendant, who was handcuffed and transported

---

1. Apparently, this court's use of the word "statement" was confusing or ambiguous to the Commonwealth. This court used the word "statement" in reference to a formal statement given at a police station. Defendant himself did not seek to suppress the "statements" to Officer Suydam. Instead, defendant sought to suppress the statement given by him at the police station. Accordingly, this court did not intend to suppress the statements to Officer Suydam. This court notes that the Commonwealth never answered the defendant's motion to suppress.

2. Count Three of defendant's omnibus pretrial motion, entitled "motion to suppress or preclude introduction of statement (corpus delecti)" asks to suppress "any statement made by petitioner." This count repeatedly uses the singular "statement" instead of the plural "statements" so that this court interpreted defendant's motion to suppress to refer to the statement defendant gave at the police station and not to any statements made to Officer Suydam. For these reasons, this court considered Count Three to be a continuation of Count Two and did not expressly rule upon it.

to the police station in a transport wagon that was summoned to the scene. (Findings of fact, at 8, ¶19.) Accordingly, this court did not err.

In the alternative, this court did not intend to suppress this declaration and agrees that this statement should not have been suppressed. This court concludes that its introduction does not affect its conclusion of law and order granting defendant's petition for writ of habeas corpus.

### III. Defendant's Subsequent Statements to Officer Suydam.

The Commonwealth next complains that this court erred when it suppressed the defendant's subsequent statements to Officer Suydam. Officer Suydam testified that after the defendant said "I guess you're here for me," Officer Suydam told the defendant he was there because he was told "there was a gentleman acting suspiciously." (Notes of testimony, omnibus pretrial hearing, December 22, 2006, at 12.) Officer Suydam testified that in response the defendant said that he "wasn't acting suspicious (sic). He was upset because his girlfriend was just burned." (N.T., omnibus pretrial hearing, at 12.) Officer Suydam then asked the defendant how his girlfriend was burned. (N.T., omnibus pretrial hearing, at 12.) Officer Suydam testified that the defendant answered that "she was in the kitchen, and that she had gotten too close to the stove and that her clothes must have caught on fire." (N.T., omnibus pretrial hearing, at 13.) Officer Suydam also testified that the defendant said that the incident occurred at his apartment. (N.T., omnibus pretrial hearing, at 13.)

As with issue two, this court did not expressly suppress these statements. Instead this court concluded that these declarations did not establish a crime had been committed or give Officer Suydam reasonable suspicion that would justify an investigative detention nor probable cause that would justify an arrest. Thus this court did not commit an error as the Commonwealth claims.

In the alternative, this court did not intend to suppress these declarations and agrees that these declarations of the defendant to Officer Suydam should not have been suppressed. This court concludes that their introduction does not affect its conclusion of law and order granting defendant's petition for writ of habeas corpus.

### IV. Whether This Court Erred in Suppressing the Defendant's Statements to C.I. Rambo.

The Commonwealth next claims that this court erred when it suppressed defendant's statement to C.I. Rambo.

The Commonwealth characterized defendant's custody as an investigative detention. An investigative detention, by implication, carries an official compulsion to stop and respond, but the detention is temporary, unless it results in the formation of probable cause for arrest, and does not possess the coercive conditions consistent with a formal arrest. Since this interaction has elements of official compulsion, it requires reasonable suspicion of unlawful activity. *Commonwealth v. Jones,* 874 A.2d 108 (Pa. Super. 2005). The court found that Officer Suydam did not have reasonable suspicion to believe that any criminal activity was afoot. Officer Suydam had

spoken only to a security guard. He had not spoken to any medical personnel or any other officers investigating the incident.

In the case sub judice, defendant was handcuffed and taken to the police station. Reading Police indicated it was departmental policy to handcuff all prisoners put in the transport wagon. Officer Suydam summoned the transport wagon to the scene. Police detentions become custodial when, under the totality of the circumstances, the conditions and/or duration of the detention become so coercive as to constitute the functional equivalent of an arrest. *Commonwealth v. Turner*, 772 A. 2d 970 (Pa. Super. 2001). This was actually a custodial arrest that was initiated without probable cause and carried on while an investigation was proceeding.

Evidence obtained as a result of either an illegal arrest or serious abuse of one's constitutional rights must be suppressed unless the Commonwealth can establish that the evidence is sufficiently purged of any taint from the illegal activity. *Commonwealth v. Green,* 525 Pa. 424, 581 A.2d 544 (1990). The defendant's confession was a direct result of the invalid seizure of his person. Therefore, defendant's confession was properly suppressed.

### V. Whether, Based, in Part, on Its Accumulated Legal Errors, This Court Committed an Abuse of Discretion When It Granted the Defendant's Request for Habeas Corpus Relief.

As noted above, this court concludes it did not commit error and thus did not abuse its discretion. Accordingly, this claim fails.

## CONCLUSION

For the foregoing reasons, this court respectfully requests that the Commonwealth's appeal be denied and this court's order of May 1, 2007 be affirmed.