J-S15010-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| DONTE CANNON | |
| Appellant | No. 1809 EDA 2017 |

Appeal from the PCRA Order entered May 15, 2017
In the Court of Common Pleas of Philadelphia County
Criminal Division at No: CP-51-CR-0008426-2010

BEFORE:  STABILE, J., DUBOW, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY STABILE, J.:                    **FILED JUNE 14, 2018**

Appellant, Donte Cannon, appeals from the May 15, 2017 order entered in the Court of Common Pleas of Philadelphia County, denying his petition for collateral relief filed pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541-9546.  Following review, we affirm.

The PCRA court provided the following procedural history:

On March 28, 2012, [Appellant] was convicted, by a jury of his peers, of Second Degree Murder, 18 Pa.C.S. § 2502(b), as a felony of the first degree; two (2) counts of Robbery, 18 Pa.C.S. § 903, as a felony of the first degree; a Violation of the Uniform Firearms Act [(VUFA)] (Carrying Firearms in Public), 18 Pa.C.S. § 6108, as a misdemeanor of the first degree; and possession of an Instrument of Crime (PIC), 18 Pa.C.S. § 907, as a misdemeanor of the first degree.  On the same day, [Appellant] was sentenced

to Life Without the Possibility of Parole for the murder conviction.[1]

On April 30, 2012, [Appellant's] post-trial motion challenging the weight and sufficiency of the evidence against him was denied without a hearing.

PCRA Court Opinion, 10/3/17, at 1.

As the PCRA court further explained, Appellant filed a direct appeal to this Court, again challenging the weight and sufficiency of the evidence. On September 8, 2014, we affirmed the trial court's judgment of sentence. On February 11, 2015, our Supreme Court denied Appellant's petition for allowance of appeal. *Id.*

Appellant filed a timely PCRA petition on January 19, 2016. Appointed counsel was replaced by retained counsel who filed an amended petition on Appellant's behalf. In response to a motion to dismiss filed by the Commonwealth, Appellant's counsel filed a brief in opposition. The Commonwealth filed a reply. *Id.* at 2.

On April 6, 2017, the PCRA court determined that Appellant's PCRA claims lacked merit and denied the petition. The court then issued a notice of its intention to dismiss the petition in accordance with Pa.R.Crim.P. 907, advising Appellant that the petition would be formally dismissed on May 11, 2017. Appellant did not file a response. *Id.*

---

[1] The trial court also imposed a concurrent sentence of ten to twenty years for each robbery, ten to twenty years for criminal conspiracy, two and one-half to five years for VUFA, and two and one-half to five years for PIC.

Following dismissal of the petition on May 15, 2017, Appellant filed a timely appeal to this Court. Both Appellant and the PCRA court complied with Pa.R.A.P. 1925.

Appellant's present four issues for our consideration:

1. Was [A]ppellant [] denied the effective assistance of counsel and a fair trial when trial counsel described "reasonable doubt" as a "real" and "substantial" doubt, as those terms reduced the burden of proof and thus deprived [Appellant] of the due process of law?

2. Was [A]ppellant denied a fair trial, due process of law, the right to confront adverse witnesses, and the effective assistance of trial and/or direct appeal counsel when he was precluded from showing that if the main accusing witness Shandee Stewart was found to have breached her plea agreement that murder charges could be reinstated against her, an error compounded by trial counsel's failure to introduce evidence that Stewart was "functioning in either the borderline range of intellectual ability or the mild range of mental retardation[?]"

3. Was [A]ppellant denied the effective assistance of counsel and a fair trial when impermissible other crimes evidence was introduced, in one instance by his own counsel during the examination of character witnesses?

4. Is the [A]ppellant entitled to relief under a "cumulative prejudice" standard?

Appellant's Brief at 6 (some capitalization omitted).

On direct appeal, this Court provided a thorough summary of the underlying facts of the case. *Commonwealth v. Cannon*, 1342 EDA 2012 at 1-6 (Pa. Super. filed September 8, 2014) (adopting Trial Court Opinion, 3/7/13, at 2-8). While a detailed summary was appropriate in light of the

- 3 -

challenges to the weight and sufficiency of the evidence, such detail is not required here. Therefore, we provide the following abridged summary of the facts relevant to the issues before us.

On January 23, 2010 at approximately 10:00 P.M., two Philadelphia police officers responded to a report of shots fired on the 5500 block of Beaumont Street in Philadelphia. One of the two officers, Officer Eric Riddick, testified that he saw two women, including Shandee Stewart (Stewart), walk toward his patrol car. Stewart told the officer that an incident had occurred on the block.

Officer Riddick exited his vehicle and discovered the deceased victim, Philippe Koukoui (Koukoui), lying facedown in a vacant lot with a gunshot wound to the back of his head. In the victim's backpack, he found several items including a cell phone, baggies and a small amount of marijuana. In a lot across the street, he discovered three shell casings.

While at the scene, Officer Riddick was approached by James Henderson (Henderson). At trial, Henderson testified that he and Koukoui went to visit Stewart and smoke marijuana. The three left Stewart's home and walked down the street when a male pointed a gun at Henderson, grabbed him, and started going through his pockets. He turned to see another male grab Koukoui while pointing a gun at Koukoui. The male holding Henderson told him to turn around, not look back, and run toward an alleyway. He heard Stewart say, "Oh, my God, what's going on[?]" As Henderson was running

through the alley, he heard gunshots. He went to his home and put on another pair of sneakers, because one of his came off as he ran through the alley. He returned to the scene and told the police that he and his friend had been robbed.

In a statement given to police, Henderson described his assailant and what the assailant was wearing. He also stated the gun pointed at him was silver but he did not know if it was a revolver or an automatic. At trial, he testified he did not remember giving those answers.

Stewart testified that she knew Koukoui from buying marijuana from him on two occasions. She had his cell number in her cell phone and called Koukoui on the day of the shooting to say she wanted to buy marijuana. Koukoui and another male arrived at her home approximately ten minutes later.

Stewart also testified that Appellant was at her home and they discussed robbing Koukoui before she called Koukoui. After Appellant made a phone call, his co-defendant, Aaron McCallum, arrived at Stewart's house. Stewart, Appellant, and McCallum talked about robbing Koukoui. The two men told Stewart to call Koukoui and say she wanted five bags of marijuana for $10.00. Appellant and McCallum said they would wait in Stewart's basement and would leave the house through the back door to rob Koukoui.

Koukoui called Stewart when he arrived at her home, accompanied by Henderson. Koukoui said he would not sell her marijuana for the requested

price. The three left Stewart's house and walked down Beaumont Street toward 55th Street. She then saw Appellant come from a vacant lot on one side of the street and McCallum come from a vacant lot on the other side of the street. Both Appellant and McCallum were holding guns and grabbed their respective victims by the shirt. She ran back to her house and saw Henderson running and McCallum firing his gun.

When Stewart got back to her house, she went to the basement where she found Appellant. Appellant said, "I think the boy is dead." Stewart then went upstairs and told her mother that the boys she was with were robbed. She and her mother went outside, saw a police car coming down the street, and told the police she heard gunshots. Stewart was taken to Homicide for investigation.

At the Homicide Division, Stewart told the detectives about the robbery and Appellant's as well as McCallum's involvement. She consented to a search of her cell phone and was taken into custody.[2] On April 27, 2011, approximately fifteen months after the shooting, Stewart entered into a Memorandum of Agreement with the District Attorney's Office under the terms of which she would plead guilty to two counts of robbery and conspiracy with

---

[2] The director of the DA's Office Technical Services Unit testified at trial that he extracted information from Stewart's phone on February 7, 2011, including a text at 9:54:21 on the night of the shooting from Stewart to McCallum that read, "They about to come out."

the murder charge being *nolle prossed*. As of the time of the trial in March of 2012, she had not been sentenced.

Based on information from Stewart, police returned to her home where they located Appellant in the basement. They took him to the Homicide Division where he stated he did not know either Henderson or Koukoui; that he and McCallum talked about robbing the two men; that Stewart called him and said the two men they were going to rob did not carry guns; and that he knew McCallum probably had a gun. He was with Stewart and McCallum when the two victims arrived at Stewart's housel. Appellant followed one of the two men from Stewart's home, grabbed him, and started fighting with him. He claimed he got two cigarettes from the male he robbed. He saw the other male had a backpack and tried to run away from McCallum. Appellant heard four or five gunshots. After the shooting, McCallum called Appellant and asked if anyone was shot. Appellant told him someone was dead and that detectives were at his aunt's house. McCallum said he was going on the run.

Again, at the conclusion of the trial, Appellant was convicted of second-degree murder, two counts of robbery, and related crimes.[3] He was sentenced to life without the possibility of parole plus concurrent sentences for the remaining convictions. In this appeal from denial of his PCRA petition, he alleges ineffectiveness for trial counsel's characterization of "reasonable

---

[3] The jury also returned jury verdicts against McCallum.

doubt," for matters related to Stewart's plea agreement, and for referring to Appellant's marijuana conviction. He also claims entitlement to relief under a "cumulative prejudice" standard.

Our standard of review is well-settled. "In reviewing the denial of PCRA relief, we examine whether the PCRA court's determination is supported by the record and free of legal error." *Commonwealth v. Taylor*, 67 A.3d 1245, 1248 (Pa. 2013) (citation and internal quotations omitted), *cert. denied*, 134 S.Ct. 2695 (U.S. 2014).

In *Commonwealth v. Spotz*, 18 A.3d 244 (Pa. 2011), our Supreme Court explained:

> We begin our analysis of ineffectiveness claims with the presumption that counsel is effective. [*Commonwealth v. Rios*, 920 A.2d 790, 799 Pa. 2007)]. To prevail on his ineffectiveness claims, Appellant must plead and prove, by a preponderance of the evidence, three elements: (1) the underlying legal claim has arguable merit; (2) counsel had no reasonable basis for his action or inaction; and (3) Appellant suffered prejudice because of counsel's action or inaction. *Commonwealth v. Steele*, 599 Pa. 341, 961 A.2d 786, 796 (2008) (citing *Commonwealth v. Pierce*, 515 Pa. 153, 527 A.2d 973 (1987)). With regard to the second, *i.e.*, the "reasonable basis" prong, we will conclude that counsel's chosen strategy lacked a reasonable basis only if Appellant proves that "an alternative not chosen offered a potential for success substantially greater than the course actually pursued." *Commonwealth v. Williams*, 587 Pa. 304, 899 A.2d 1060, 1064 (2006) (citation omitted). To establish the third, *i.e.*, the prejudice prong, Appellant must show that there is a reasonable probability that the outcome of the proceedings would have been different but for counsel's action or inaction. *Commonwealth v. Dennis*, 597 Pa. 159, 950 A.2d 945, 954 (2008).

*Id.* at 259-60.

In his first issue, Appellant argues trial counsel was ineffective for describing "reasonable doubt" as a "real" and "substantial" doubt, claiming those terms reduced the burden of proof and deprived him of due process. The PCRA court rejected Appellant's contentions for three reasons. As the PCRA court noted:

> He gave at least three examples of it, as well as did the well known example with the scales of justice where he stood up and held his arms out and tilted them.
>
> In totality, he gave a very persuasive argument for the defense, in fact, a tutorial on reasonable doubt, if one were to read counsel's closing argument. [Appellant] isolates only a few of counsel's words of that seven-page description of reasonable doubt.
>
> Counsel's remarks must be read as a whole and in context and as such, they constitute a fair description of reasonable doubt.
>
> Moreover, the trial court's use of the word, substantial, in defining reasonable doubt has been found by the Pennsylvania Supreme Court to not impermissibly alter the Commonwealth's burden of proof, and that is **Commonwealth v. Stokes**[, 615 A.2d 704 (Pa. 1992).]
>
> Finally, the court charged the jury on the legal definition and also told the jury that they are only bound by the legal definitions given to them by the court. Therefore, this issue has no merit.

Notes of Testimony, PCRA Hearing, 4/6/17, at 5-6 (some capitalization omitted). We agree. Our reading of counsel's argument confirms that he did not reduce the burden of proof for Appellant. Rather, he cogently explained in detail the concept of reasonable doubt, distinguishing it from "preponderance" and "clear and convincing." Notes of Testimony, Trial, 3/27, 16, at 127-133. More importantly, prior to closing arguments, the trial court

instructed the jurors as follows: "You are not bound by any principles of law mentioned by counsel during closing arguments. You are, however, bound by the law as I will give it to you at the end of closing arguments." Notes of Testimony, Trial, 3/27/12, at 126. After counsel delivered closing arguments, the trial court again directed the jurors to apply only the law as instructed by the trial court. The court then accurately explained reasonable doubt. Notes of Testimony, Trial, 3/28/12, at 15-19.

Juries are presumed to follow the trial court's instructions. *Commonwealth v. Mollett*, 5 A.3d 291, 313 (Pa. Super. 2010). Further, as in *Commonwealth v. Green*, 581 A.2d 544 (Pa. 1990), "the trial court nonetheless gave the jury instructions that the arguments of counsel were not evidence or statements of law and that the Commonwealth labored under the burden of proving guilt beyond a reasonable doubt or the jury was to acquit." *Id.* at 562. As in *Green*, we conclude counsel's remarks were not prejudicial to Appellant and the trial court's instructions were proper. Because Appellant's first claim lacks arguable merit, Appellant is not entitled to relief.

Appellant next asserts the PCRA court erred by rejecting Appellant's ineffectiveness claim based on failure to present impeachment evidence in the form of Stewart's mental health evaluation and her plea agreement. We disagree.

Here, Stewart underwent a mental health evaluation in April 2010 to determine whether she was competent to stand trial. The diagnostic

formulation included a determination that Stewart is "functioning in either the borderline range of intellectual ability or the mild range of mental retardation." Mental Health Evaluation, 4/26/10, at 2. The recommendations following examination indicated that "in spite of her intellectual and emotional limitations [Stewart] is capable of taking part in legal proceedings." *Id.* at 3.

Appellant argues trial counsel was ineffective for not impeaching Stewart with the evaluation. However, our Supreme Court has explained that "[o]nly mental health disabilities that impair a witness's ability to observe, recall, or report events, are relevant and admissible to impeach a witness's credibility." *Commonwealth v. Davido*, 106 A.3d 611, 637 (Pa. 2014) (citation omitted). Appellant's evaluation did not reveal any such disability. In fact, the evaluator determined that her "recent and remote memory are fairly good" and that she was 'capable of taking part in legal proceedings." Mental Health Evaluation, 4/26/10, at 2, 3. Further, Appellant suggests that Stewart's evaluation would have evidenced her susceptibility to "suggestion or pressure" by law enforcement. Appellant's Brief at 25. However, the evaluation reflected that she was "aware of the charges against her," and had a "working knowledge of the legal process" and the ability to "cooperate with counsel." Mental Health Evaluation, 4/26/10, at 2. Therefore, the evaluation does not support a claim that she was an easily manipulated witness.

Regarding the plea agreement, Appellant complains that Stewart's counsel testified at trial that the murder charge against her could not be

reinstated and that the trial court stated the same thing in the presence of the jury. Appellant's Brief at 22. Appellant contends his trial counsel objected on the grounds the evidence was false and trial counsel was not an expert. However, counsel did not pursue the issue on appeal.

Appellant ignores the fact that Stewart's plea agreement was entered into evidence and clearly reflected, *inter alia*, that she would not protect any persons through omission or false information; that she would testify truthfully and would face perjury charges if she did not; and that any violation of the terms of the agreement—including if she lied or stopped cooperating—would render the agreement null and void. Under any such circumstance, she would be prosecuted to the fullest extent of the law. Memorandum of Plea Agreement, 6/3/11, at ¶¶ at 3, 4 and 12. More importantly in the context of Appellant's claims, Stewart herself testified she was aware that murder charges could be reinstated against her. *See* Notes of Testimony, Trial, 3/22/12, at 195.

Appellant has not proven any arguable merit to his assertions regarding the mental health evaluation or the plea agreement. Nor has he demonstrated that he was prejudiced by counsel's actions. Because Appellant's claim of trial counsel ineffectiveness fails, his claim of appellate counsel's ineffectiveness for failing to raise the issue on appeal similarly fails. *Commonwealth v. Elliott*, 80 A.3d 415, 427 (Pa. 2013) ("If the petitioner cannot prove the underlying claim of trial counsel ineffectiveness, petitioner's derivative claim

of appellate counsel ineffectiveness fails."). Appellant's is not entitled to relief on his second ineffectiveness claim.

In his third issue, Appellant complains his counsel was ineffective for not filing a motion *in limine* to preclude evidence of a marijuana conviction and for mentioning the conviction in the course of examining character witnesses as well as in his closing argument. Appellant contends the prejudice to him is clear because his defense was actual innocence, making credibility paramount. While the PCRA court agreed there was merit to Appellant's claim, it nevertheless rejected it because Appellant failed to demonstrate prejudice.

As the PCRA court noted, counsel made a choice to present Appellant as both law-abiding and peaceful. Had he chosen to present testimony as to peacefulness only, the conviction would not have come in. However, "neither would the jury have heard that [Appellant] had a reputation for being law-abiding, which is very powerful evidence for a jury to hear, especially when the conviction is only a misdemeanor marijuana conviction and this is the trial of a homicide." Notes of Testimony, PCRA Hearing, 4/6/17, at 3. Further, counsel "used the marijuana conviction and juxtaposed [Appellant's] minor conviction and good character against some of the witnesses' crimes of violence in his closing argument." *Id.* at 2-3. Therefore, while Appellant's assertion had merit, satisfying the first requirement of the ineffectiveness test, Appellant could not demonstrate second or third elements, *i.e.*, that counsel

did not have a reasonable basis or that Appellant suffered prejudice affecting the outcome of his trial. *See Spotz, supra*. Appellant's his third issue fails.

In his fourth issue, Appellant asks that we consider a "cumulative prejudice" claim if we reject, as we have, his first three claims. Citing *Commonwealth v. Johnson*, 966 A.2d 523, 532 (Pa. 2009), he suggests a cumulative error analysis is permitted when evidentiary or other rulings overlap. He asserts that the errors alleged here are intertwined, claiming:

> The introduction of the marijuana conviction diminished [A]ppellant's credibility, the failures regarding the cooperating witness increased her believability, and counsel then reduced the prosecution burden of proof. All of this occurred in a case where no physical evidence linked [A]ppellant to the crime and his post-crime behavior—remaining at the house even after police were there once—reflects a lack of consciousness of guilt.

Appellant's Brief at 29. While acknowledging Appellant's confession to the crimes, he notes that the jury, as finder of fact, is "not compelled to believe the matters contained in the confession and to automatically return a verdict of guilty, since the confession is not decisive of the issue of the defendant's guilt or innocence." *Id.* at 30.

In addressing Appellant's individual claims, the PCRA court properly determined that none except "the introduction of [Appellant's] conviction for the possession of marijuana" had merit, and even that claim failed for lack of prejudice to Appellant. Therefore, Appellant's assertion we can find "cumulative prejudice" fails because Appellant he has not demonstrated the "multiple instance of deficient performances" that our Supreme Court

- 14 -

considered in ***Commonwealth v. Hannibal***, 156 A.3d 197, 234 (Pa. 2016), to be sufficient to support a cumulative prejudice finding. ***See*** Appellant's Brief at 29. We find no error in the PCRA court's rejection of Appellant's cumulative prejudice claim.

The PCRA court's determinations are supported by the record and free of legal error. Therefore, we shall not disturb the court's May 15, 2017 order dismissing Appellant's PCRA petition.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 6/14/18