J-A26015-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
NAEM WALLER :
:
Appellant : No. 2824 EDA 2019

Appeal from the PCRA Order Entered September 26, 2019
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0713201-2002

BEFORE: BENDER, P.J.E., LAZARUS, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY BENDER, P.J.E.: **FILED: MARCH 1, 2021**

Appellant, Naem Waller, appeals from the post-conviction court's

September 26, 2019 order denying, as untimely, his petition filed under the

Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546. After careful

review, we vacate the court's order in part, affirm in part, and remand for an

evidentiary hearing limited to one issue.

The PCRA court summarized the facts and procedural history of

Appellant's case, as follows:

On April 12, 2002, at approximately 11:00 pm, Brian Birkelback
("Birkelback") and a group of friends met on the corner of Rising
Sun Avenue and Gilham Avenue in Philadelphia, PA. As they were
sitting in a vehicle, two men approached the vehicle asking the
group if they wanted to buy marijuana. One of the passengers in
the vehicle noticed that one of the approaching men had a gun
and yelled that this was a robbery. A tussle ensued between
Birkelback and one of the men, [during which] the man pulled out

_____

[*] Former Justice specially assigned to the Superior Court.

a gun and shot Birkelback.  After the shooting[,] the shooters fled in a gold Grand Prix.  Birkelback was pronounced dead at 12:19 a.m.[] on April 13, 2002.

Appellant and co-defendant, Devin Rouse ("Devin"), were tried by jury on November 14, 2003[,] and April 14, 2004.  Each trial ended in a hung jury.  On December 17, 2004, before the Honorable Kathryn Streeter Lewis, a jury found Appellant and Devin guilty.  Both were convicted for second[-]degree murder, robbery, carrying a firearm without a license, and possessing instruments of crime in connection to the killing of Birkelback.  On February 11, 2005, Appellant was sentenced to life imprisonment without parole for the murder, one to three years for the firearm conviction, and one to two years for the possession conviction, each to run consecutive with each other but concurrent to the life sentence.

Appellant appealed and, on April 12, 2006, the Pennsylvania Superior Court affirmed his judgment of sentence. [**Commonwealth v. Waller**, 902 A.2d 984 (Pa. Super. 2006) (unpublished memorandum).]  Appellant filed a petition for allowance of appeal in the Pennsylvania Supreme Court, which denied *allocatur* on October 12, 2006.  [**Commonwealth v. Waller**, 909 A.2d 305 (Pa. 2006).]  Appellant filed his first timely PCRA petition on September 12, 2007.  The [PCRA] court issued a notice of intent to dismiss the petition pursuant Pa.R.Crim.P. 907 ("Rule 907 notice").  On April 17, 2008, the court formally dismissed the PCRA petition after Appellant failed to respond to the notice.  Appellant timely appealed the PCRA dismissal and on July 29, 2009, the Pennsylvania Superior Court affirmed the dismissal. [**Commonwealth v. Waller**, 981 A.2d 938 (Pa Super. 2009) (unpublished memorandum).]  On April 7, 2010, Pennsylvania Supreme Court denied the petition for allowance of appeal.  [**Commonwealth v. Waller**, 992 A.2d 889 (Pa. 2010).]

On May 27, 2015, Appellant filed his second *[p]ro se* PCRA petition, alleging newly[-] and after[-]discovered facts.  Appellant attached an Affidavit claiming that two other people were responsible for the alleged murder, and he attached [an opinion from the PCRA court addressing a PCRA petition filed by his] co-defendant[,] Devin[,] … that allegedly reveals previously undisclosed mental health issues suffered by Ty-Ron [Rouse] when he was acting as Commonwealth's witness against Appellant[,] and that Ty-Ron recanted his testimony from

Appellant's trial.[1]  On July 17, 2018, Appellant filed a counseled amended petition, attaching just the Affidavit.  On March 19, 2019, Appellant filed a second[,] counseled[,] amended PCRA petition attaching both the Affidavit and [the] PCRA [court] opinion [in Devin's case].  On June 26, 2019, a PCRA hearing was scheduled to allow counsel from both sides to argue the merits of holding an evidentiary hearing.  After argument and having reviewed the PCRA petition, the Affidavit, Devin's PCRA opinion, and the Commonwealth['s] pleading[,] this [c]ourt found an evidentiary hearing was not necessary because there was no genuine issue of material fact, the petition was facially untimely[,] and Appellant could not avail himself of the newly and after discovered facts exception.  This [c]ourt filed a Rule 907 notice on August 27, 2019[,] to which Appellant filed an untimely response on September 18, 2019.  Consequently, on September 26, 2019, this [c]ourt formally dismissed Appellant's second amended PCRA petition.

PCRA Court Opinion (PCO), 12/24/19, at 1-3.

_____

[1] In our memorandum decision on direct appeal, this Court described Ty-Ron's testimony at Appellant's trial, as follows:

On May 13, 2002, Ty-Ron Rouse, Devin's first cousin, was in custody on another matter.  Ty-Ron told the police that Devin told him that he went to rob Brian with two other people.  Brian jumped out of the car and he thought he had a weapon so he shot him in the back.  Devin told him that he used a 9mm to shoot Brian, they left the car on Roosevelt Boulevard[,] and he threw the gun in the river.  The police picked him up for questioning and he told them that he was on his way to see a girl.  Ty-Ron testified at trial concerning what Devin told him as well as how he knew Brian, Michael, Devin and [Appellant].  Ty-Ron stated that Devin knew Michael because he bought prescription drugs from him.  He also testified that Devin and [Appellant] knew each other very well and that [Appellant] had access to his mother's car.  (N.T.[,] 12/13/04[, at] 37-53).

*Commonwealth v. Waller*, No. 686 EDA 2005, unpublished memorandum at 5 (Pa. Super. filed April 12, 2006) (citation omitted).

Appellant filed a timely notice of appeal, and he also complied with the court's order to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. The PCRA court filed its Rule 1925(a) opinion on December 24, 2019. Herein, Appellant states two issues for our review:

> 1. Did the PCRA [c]ourt abuse its discretion in dismissing Appellant's PCRA [p]etition without [an] evidentiary hearing with respect to his after[-]discovered evidence claim related to Timothy Moses?
>
> 2. Did the PCRA [c]ourt abuse its discretion in dismissing Appellant's PCRA [p]etition without [an] evidentiary hearing with respect to his **Brady**[2] and after[-]discovered evidence claim related to Ty[-]Ron Rouse?

Appellant's Brief at 2.

This Court's standard of review regarding an order denying a petition under the PCRA is whether the determination of the PCRA court is supported by the evidence of record and is free of legal error. **Commonwealth v. Ragan**, 923 A.2d 1169, 1170 (Pa. 2007). We must begin by addressing the timeliness of Appellant's petition, because the PCRA time limitations implicate our jurisdiction and may not be altered or disregarded in order to address the merits of a petition. **See Commonwealth v. Bennett**, 930 A.2d 1264, 1267 (Pa. 2007). Under the PCRA, any petition for post-conviction relief, including a second or subsequent one, must be filed within one year of the date the judgment of sentence becomes final, unless one of the following exceptions set forth in 42 Pa.C.S. § 9545(b)(1)(i)-(iii) applies:

---

[2] **Brady v. Maryland**, 373 U.S. 83 (1963).

**(b) Time for filing petition.--**

(1) Any petition under this subchapter, including a second or subsequent petition, shall be filed within one year of the date the judgment becomes final, unless the petition alleges and the petitioner proves that:

(i) the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States;

(ii) the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or

(iii) the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively.

42 Pa.C.S. § 9545(b)(1)(i)-(iii). Additionally, at the time Appellant's petition was filed, section 9545(b)(2) required that any petition attempting to invoke one of these exceptions "be filed within sixty days of the date the claim could have been presented." 42 Pa.C.S. § 9545(b)(2).[3]

Here, Appellant's judgment of sentence became final in January of 2007, and, thus, his present petition filed in May of 2015 is patently untimely. Consequently, for this Court to have jurisdiction to review the merits thereof,

_____

[3] An amendment to section 9545(b)(2), which became effective on December 24, 2018, changed the language to require that a petition "be filed within one year of the date the claim could have been presented." 42 Pa.C.S. § 9545(b)(2). That amendment applies to any claims arising on or after December 24, 2017.

Appellant must prove that he meets one of the exceptions to the timeliness requirements set forth in 42 Pa.C.S. § 9545(b).

In Appellant's first issue, he argues that he meets the newly-discovered fact exception of section 9545(b)(1)(ii) based on the following statement he received from Timothy Moses, which Appellant reproduces in his brief, as follows:

> Stan killed white boy Brian on Gilham St back in April of April [*sic*] of 2002. He was w/ Jizz. What happened was white boy Chris owed them some money from a prior drug deal and they went to his crib on Gilham St that night and Stan though[t] Brian was Chris. They went to get they money, Brian jumped outta the car and started fighting Stan and got shot. Brian got shot mainly due to mistake identity. Stan had on that polo hat w/ the shirt to match. He was dressed for the party we was supposed to go to the bar that night. It was supposed to be his belated b-day part[y] w just us the Brill Street Boys. Jizz just had on a hoody. He was always street. We was all apart of the Brill Street gang and the cops was questioning us about that shooting when it first happened but then they left us alone. I wasn't there when it happened but I was them [*sic*] on Brill St right before they went around there. They drove Jizz Gold gran Prix tinted windowed over there and when they came back Stan hopped out the car and said damn dog. I just shot the wrong mothafucka we ain't never go to the bar either that night. I've struggled this situation for a couples years now and a big reasons why I decided to come forward now is because I'm not that same street thug no more. I've been in jail for multiple years and today I'm changed man. I've completed violence prevention thinking for a change and etc. My whole mind frame today is different. I been knew this information because its what they told me and I knew that wasn't bullshiting because the next day everybody was talking about it so I went around Gilham St and saw exactly what they was taking about. Stan been dead for years now and I could've come forward but I was living that thug life the code of silence. When I read those newspaper articles about the vindication if Eugene Giyard for a murder that he didn't even do what he spent 16 yrs behind bars for I know that dev would be subject to the same if I kept my mouth shut. I've been looking at this dude C Devin in his face for multiple years now knowing that

- 6 -

he was booked for a murder that my boys committed so I feel as though now is the right time. Back in 2007 (I think) Dev approached me. I guess he found out who I was somebody out Launcrest [*sic*] and asked me if I knew who really killed Brian. I told him that I couldn't help him and we never spoke about that again But the truth is now before you so ain't no reason to keep the wrong dudes behind bars any longer the way the police was questioning us and everybody about this murder, your bound to find some [RR049] other information to corroborate what it is that I'm saying.

I Timothy Moses Jr do her-by state that nobody coerced or offered me with any favorable gifts, money, services for my statement.

I was incarcerated and though [*sic*] that I would be in more trouble with the prosecutors.

[signed] Timothy Moses 4-3-15 145 Lewis St. Phil Lansdowne

PA 19050

[witness, private investigator, and notary's signatures omitted]

Appellant's Brief at 8-9 (citations to the reproduced record omitted).

To establish that Moses's statement constitutes a newly-discovered fact under section 9545(b)(1)(ii), Appellant must show that: (1) the information provided by Moses was unknown to him, and (2) that he could not have ascertained it by the exercise of due diligence. *See Commonwealth v. Brown*, 141 A.3d 491, 500 (Pa. Super. 2016) (citation omitted). In explaining how he has met these requirements, Appellant states:

The facts predicating this claim, that Stan and Jizz committed this offense, were unknown to Appellant. Appellant was not at the scene of the shooting and was unaware of who the real perpetrators were. There was no evidence within Appellant's discovery to indicate that Stan committed the instant offense. Nor were these facts a matter of public record. Indeed, [] Moses specifically states that he never before disclosed this information and has in fact lied in the past when asked. As such, the proffered facts were previously unknown to him.

- 7 -

The proffered facts could not have been ascertained sooner by exercise of diligence. As [] Moses states, this is the first time he is discussing this matter. Stan and the Brill Street Gang[']s involvement has never been a matter of public record. Based on [] Moses's statement, [] Birkelback and the other occupants of the car were not Stan's intended target. Absent an eyewitness identification or member of the Brill Street Gang revealing this information, there was no basis for Appellant to discern Stan's involvement. Thus, Appellant[,] through [the] exercise of reasonable diligence[,] was unable to discover the evidence of Stan's involvement prior to [] Moses's revelation.

Further, the record demonstrates that after [] Moses reached out to Appellant on or around March 20, 2015[,[4]] and Appellant did not receive any further correspondence from [] Moses. Appellant promptly retained a private investigator to locate [] Moses. On April 3, 2015, merely two weeks after receiving [] Moses's initial vague correspondence, Appellant's private investigator was able to locate and secure a statement from [] Moses. Thus, the record establishes that Appellant acted diligently in learning his proffered facts once he learned of their potential existence.

Appellant's Brief at 11-12 (citations omitted). Finally, Appellant points out that he received Moses's statement on April 3, 2015, and he filed his petition within 60 days thereof, on May 27, 2015, thereby meeting the 60-day requirement of section 9545(b)(2).

The PCRA court agreed with Appellant that he satisfied section 9545(b)(2). *See* PCO at 5. However, it did not address whether the information provided by Moses was previously unknown to Appellant, or whether he acted with due diligence in discovering it. Instead, the court

---

[4] Appellant claims that on March 20, 2015, he "received a vague note from [] Moses that indicated he had information about Appellant's case. Appellant replied to [] Moses but to no avail. Appellant retained an attorney and private investigator to try to locate [] Moses." Appellant's Brief at 7 (citations to the record omitted).

rejected his attempt to meet a timeliness exception on the basis that Moses's

Affidavit contained inadmissible hearsay. The court disagreed with Appellant's

assertion that Stan's statements were admissible under the 'excited utterance'

exception to the rule precluding hearsay. The court reasoned:

> Hearsay is a statement a declarant made outside of "testifying at the current trial or hearing" and offered "in evidence to prove the truth of the matter asserted in the statement." Pa.R.E. 801. The declarant is the person who made the statement[,] and a statement may be an oral or written assertion. *Id.* An affidavit is inadmissible hearsay when offered for its truth, unless it fits within a hearsay exception. ***Sprague v. Walter***, 656 A.2d 890, 913 (Pa. Super. 1995).
>
> Appellant argues that Stan's declaration when exiting the vehicle fits within Pa.R.E. 803(2) hearsay exception as an excited utterance. An excited utterance is "[a] statement relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused." Pa.R.E. 803(2). It is made "spontaneously and without opportunity for reflection." ***Commonwealth v. Boczkowski***, 846 A.2d 75, 95 ([Pa.] 2004). To establish an excited utterance, the proponent must show "first, that [the declarant] had witnessed an event sufficiently startling and so close in point of time as to render her reflective thought processes inoperable and, second, that [the] [declarant's] declarations were a spontaneous reaction to that startling event." ***Commonwealth v. Stokes***, 615 A.2d 704, 712 ([Pa.] 1992) (quoting ***Commonwealth v. Green***, 409 A.2d 371, 373-74 ([Pa.] 1979)).
>
> Here, Appellant has failed to establish that Stan's alleged statement to Moses was an excited utterance. The relevant part of Moses'[s] statement, as it relates to Stan's alleged confession, is as follows: "I was there on Brill St [*sic*] right before they went around there [where the shooting occurred]. They drove Jizz['s] gold Grand Prix [with] tinted windows over there and when they came back Stan hopped out [of] the car and said, "damn dog[,] I just shot the wrong mothafucka.[']" Moses Affidavit at 1. Moses'[s] statement does not establish Stan's confession as an excited utterance. It is clear that a botched robbery and a murder can be deemed a "startling event or condition," however, nowhere

in Moses'[s] statement is there a showing that the confession was made "so close in time as to render [declarant's] reflective thought processes inoperable," or that the statement was a "spontaneous reaction to that startling event." **Stokes**, 615 A.2d at 712. Furthermore, Moses'[s] statement makes no mention of the declarant's physical appearance or emotional state when he arrived [at] Brill street. The statement does not reveal how much time passed in between the shooting and Stan['s] making the alleged confession. And ultimately, there is no showing that the statement was a "spontaneous reaction" to the murder. Stan's confession is not admissible hearsay based on the excited utterance exception.[1]

> [1] The Affidavit does not provide an address, telephone, or any other contact information for Stan.[5] The Affidavit also does not explain the extent of his relationship with Stan or Jizz, aside from the fact that they used to be part of the same alleged gang.

Since Stan's alleged confession is inadmissible hearsay and does not avail itself of any hearsay exception[,] it would not implicate section 9545(b)(1)(ii), exception to the PCRA timeliness requirement, and the court … lack[s] jurisdiction to address this claim.

PCO at 7-8.

On appeal, Appellant insists the court's decision is erroneous, contending:

[O]ur Supreme Court explained that "[n]o definite time-limit or distance from the crime or event in issue can be fixed by the Courts to determine what spontaneous utterances are admissible; each case must depend on its own facts and circumstances." **Commonwealth v. Noble**, [88 A.2d 760, 763] (Pa. 1952). This

---

[5] The court states that Appellant failed to provide contact information for "Stan," but this appears to be a typo considering the court's next sentence. If the court did intend to refer to Stan, we fail to see why Stan's contact information was necessary, given that he is now deceased. Additionally, if the court meant to refer to Moses, as we presume, Appellant points out that he provided Moses's address, date of birth, and the proposed substance of his testimony in his *pro se* PCRA petition. **See** PCRA Petition, 5/27/15, at 6.

- 10 -

jurisprudence is embodied in the Comment to Pa.R.E. 803(2), which states that the statement (1) need not describe or explain the startling event or condition; it need only relate to it, and (2) need not be made contemporaneously with or immediately after, the startling event. It is sufficient if the stress of excitement created by the startling event or condition persists as a substantial factor in provoking the utterance. *See*, Pa.R.E. 803(2) Comment.

"In assessing a statement offered as an excited utterance, the court must consider, among other things, whether the statement was in narrative form, the elapsed time between the startling event and the declaration, whether the declarant had an opportunity to speak with others and whether, in fact, she did so." *Commonwealth v. Carmody*, 799 A.2d 143, 147-48 (Pa. Super. 2002) (finding no excited utterance exception for a victim's written statement that "was given subsequent to several intervening events," where the victim gave verbal statements to an officer, then was taken into another room to give a written statement). However, the "crucial question, regardless of the lapse of time, is whether, at the time the statement was made, the nervous excitement continues to dominate while the reflective process[es] remain[] [in] abeyance." *Commonwealth v. Gore*, 396 A.2d 1302, 1305 (Pa. Super. 1978).

Here, [] Moses's statement establishes that Stan's confession was related to the startling event, the shooting, and was made while Stan was still under the stress of the event. [] Moses's statement reflects that the men were supposed to go out to the bar that night, Stan and Jizz left to go collect a debt, and that when Stan and Jizz returned the same night, Stan "hopped" out of the car and confessed that he "just shot the wrong muthafucka[,]" and that the shooting impacted Stan in such a way that the men did not go to the bar. [] Moses's statement and putative testimony confirm that it was the same night as the shooting, because the following day [] Moses went to view the crime scene on Gilham Street to confirm what Stan had said. The location of the shooting and Brill Street are both in the Lawncrest neighborhood of north Philadelphia. Stan "hopping" out of the car reflects a physical manifestation of the stress that he was under. *See [i]d.* Coupled with his confession that it had "just" happened and the fact that the gang changed their plans from going to the bar, the reasonable inference based on [] Moses's statement is that Stan went directly from Gilham Street to Brill Street and was still under the stress of the event when he made the confession to [] Moses. *See [i]d[.]*; … *Gore*, *supra* (regardless of lapse of time, to

- 11 -

determine whether a declaration was an excited utterance, is whether the nervous excitement continues to dominate the reflective process).

As such, Appellant has met his burden of pleading and proving his proffered evidence is not inadmissible hearsay. Reversal and remand for an evidentiary hearing are warranted.

Appellant's Brief at 14-16 (some citations omitted).

Given Appellant's argument, we conclude that the PCRA court erred by finding, based only on Moses's Affidavit, that Stan's statements were not excited utterances. Initially, the court is correct that "[a] claim which rests exclusively upon inadmissible hearsay is not of a type that would implicate the [newly-discovered fact] exception to the timeliness requirement, nor would such a claim, even if timely, entitle [the petitioner] to relief under the PCRA." *Commonwealth v. Brown*, 141 A.3d 491, 501 (Pa. Super. 2016) (quoting *Commonwealth v. Yarris*, 731 A.2d 581, 592 (Pa. 1999)). However, based on the record as it currently stands, we are compelled to disagree with the court's decision that "nowhere in Moses'[s] statement is there a showing that the confession was made so close in time as to render [his] reflective thought processes inoperable, or that the statement was a spontaneous reaction to that startling event." PCO at 8 (internal quotation marks and citation omitted). Rather, we concur with Appellant that Moses's Affidavit at least *suggests* that Stan made the statement shortly after the shooting, and that he did so while in an excited state. The more specific information about Stan's physical appearance and his emotional condition, and the exact amount of time that elapsed between the shooting and his confession, are all questions

- 12 -

of material fact that warrant an evidentiary hearing. *See Commonwealth v. Grayson*, 212 A.3d 1047, 1054-55 (Pa. Super. 2019) ("Generally, if there are factual issues to be resolved, the PCRA court should hold an evidentiary hearing.") (internal quotation marks and citations omitted).

Therefore, we vacate the portion of the PCRA court's order that denied Appellant's claim premised on Moses's Affidavit and remand for an evidentiary hearing on that issue. If Appellant proffers sufficient evidence to prove that Stan's statements were excited utterances, the PCRA court shall then decide if the information contained in Moses's Affidavit was unknown to Appellant, and if he exercised due diligence in obtaining it, as the court never made findings on these issues. Finally, if the court concludes that Appellant has satisfied these requirements of section 9545(b)(1)(ii), it shall then determine if a new trial is warranted based on this after-discovered evidence. *See Commonwealth v. Padillas*, 997 A.2d 356, 363 (Pa. Super. 2010) ("To be granted a new trial based on the basis of after-discovered evidence[, the petitioner] must demonstrate that the evidence: (1) could not have been obtained prior to the conclusion of the trial by the exercise of reasonable diligence; (2) is not merely corroborative or cumulative; (3) will not be used solely to impeach the credibility of a witness; and (4) would likely result in a different verdict if a new trial were granted.") (citations omitted).

In Appellant's second issue, he argues that he has discovered new evidence that Ty-Ron Rouse has a serious mental illness, and that he recanted his testimony at trial. He claims that the Commonwealth violated *Brady* by

failing to disclose Ty-Ron's mental health issues, and that this new evidence, combined with Ty-Ron's recantation, warrants a new trial.

In assessing Appellant's argument, we have reviewed the record, pertinent case law, the Commonwealth's brief, and the PCRA court's opinion. We conclude that the PCRA court's analysis correctly disposes of Appellant's **Brady** and after-discovered evidence claims regarding Ty-Ron's mental health issues and his purported recantation. **See** PCO at 8-13. Thus, we adopt this portion of the PCRA court's opinion in affirming the portion of the court's order that denied Appellant relief based on his claims involving Ty-Ron Rouse.

Order vacated in part, affirmed in part. Remanded for an evidentiary hearing. Jurisdiction relinquished.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 3/1/21

**IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY**
**FIRST JUDICIAL DISTRICT OF PENNSYLVANIA**
**TRIAL DIVISION – CRIMINAL SECTION**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | CP-51-CR-0713201-2002 |
| | : | |
| v. | : | **FILED** |
| | : | DEC 2 4 2019 |
| NAEM WALLER, | : | |
| **Appellant** | : | Office of Judicial Records |
| | | Appeals/Post Trial |

## OPINION

Ransom, J                                                                December 24, 2019

### FACTUAL AND PROCEDUAL HISTORY

Appellant, Naem Waller ("Appellant"), appeals, through counsel, from the September 26, 2019, Order dismissing his second petition seeking collateral relief pursuant the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-5456. Appellant relied on the newly and after discovered facts exception of the PCRA, Section 9545(b)(1)(ii). Pursuant to Section 9545(b)(1)(ii), Appellant claims in his second petition that; (1) an Affidavit of Statement ("the Affidavit") from, an individual named Timothy Moses ("Moses"), reveals that two other people were the true perpetrators of the alleged murder contains newly and after-discovered facts, (2) previously undisclosed mental health records of a Commonwealth witness, Ty-Ron Rouse ("Ty-Ron"), is newly and after discovered *Brady* evidence, and, (3) that Ty-Ron recanted his testimony that he gave at Appellant's trial is newly and after discovered facts.

This Court determined that Appellant's petition was facially untimely, without merit, and that none of the statutory exceptions applied. Therefore, the Court dismissed the petition as untimely.

1

A brief summary of the factual and procedural history follows. On April 12, 2002, at approximately 11:00 pm, Brian Birkelback ("Birkelback") and a group of friends met on the corner of Rising Sun Avenue and Gilham Avenue in Philadelphia, PA. As they were sitting in a vehicle, two men approached the vehicle asking the group if they wanted to buy marijuana. One of the passengers in the vehicle noticed that one of the approaching men had a gun and yelled that this was a robbery. A tussle ensued between Birkelback and one of the men, where the man pulled out a gun and shot Birkelback. After the shooting the shooters fled in a gold Grand Prix. Birkelback was pronounced dead at 12:19 a.m., on April 13, 2002.

Appellant and co-defendant, Devin Rouse ("Devin"), were tried by jury on November 14, 2003 and April 14, 2004. Each trial ended in a hung jury. On December 17, 2004, before the Honorable Kathryn Streeter Lewis, a jury found Appellant and Devin guilty. Both were convicted for second degree murder, robbery, carrying a firearm without a license, and possessing instruments of crime in connection to the killing of Birkelback. On February 11, 2005, Appellant was sentenced to life imprisonment without parole for the murder, one to three years for the firearm conviction, and one to two years for the possession conviction, each to run consecutive with each other but concurrent to the life sentence.

Appellant appealed and, on April 12, 2006, the Pennsylvania Superior Court affirmed his judgment of sentence. Appellant filed a petition for allowance of appeal in the Pennsylvania Supreme Court, which denied *allocatur* on October 12, 2006. Appellant filed his first timely PCRA petition on September 12, 2007. The trial court issued a notice of intent to dismiss the petition pursuant Pa.R.Crim.P.907 ("Rule 907 notice"). On April 17, 2008, the court formally dismissed the PCRA petition after Appellant failed to respond to the notice. Appellant timely appealed the PCRA dismissal and on July 29, 2009, the Pennsylvania Superior Court affirmed the dismissal.

On April 7, 2010, Pennsylvania Supreme Court denied the petition for allowance of appeal.

On May 27, 2015, Appellant filed his second Pro se PCRA petition, alleging newly and after discovered facts. Appellant attached an Affidavit claiming that two other people were responsible for the alleged murder, and he attached co-defendant Devin's PCRA opinion that allegedly reveals previously undisclosed mental health issues suffered by Ty-Ron when he was acting as Commonwealth's witness against Appellant and that Ty-Ron recanted his testimony from Appellant's trial. On July 17, 2018, Appellant filed a counseled amended petition, attaching just the Affidavit. On March 19, 2019, Appellant filed a second counseled amended PCRA petition attaching both the Affidavit and Devin's PCRA opinion. On June 26, 2019, a PCRA hearing was scheduled to allow counsel from both sides to argue the merits of holding an evidentiary hearing. After argument and having reviewed the PCRA petition, the Affidavit, Devin's PCRA opinion, and the Commonwealth pleading this Court found an evidentiary hearing was not necessary because there was no genuine issue of material fact, the petition was facially untimely and Appellant could not avail himself of the newly and after discovered facts exception. This Court filed a Rule 907 notice on August 27, 2019 to which Appellant filed an untimely response on September 18, 2019. Consequently, on September 26, 2019, this Court formally dismissed Appellant's second amended PCRA petition. Appellant appeals the dismissal.

In the event that the Appellate Court rules that an analysis of the issues raised on appeal is appropriate, the analysis by the trial court is set forth below.

## ISSUES

I.  Did this Court properly dismiss without an evidentiary hearing the issue of Timothy Moses' Affidavit of Statement as newly and after discovered evidence because his testimony is inadmissible under any hearsay exception?

3

II.     Did this Court properly dismiss without an evidentiary hearing Defendant's claim that

Ty-Ron Rouse's undisclosed mental illness is newly and after discovered *Brady* material?

III.    Did this Court properly dismiss without an evidentiary hearing Defendant's claim that

Ty-Ron Rouse's recantation is newly and after discovered evidence?

## DISCUSSION

A PCRA petition must be filed within one year of the date the judgment of sentence

becomes final. 42 Pa.C.S.A. § 9545(b)(1). For the purposes of the PCRA, "a judgment becomes

final at the conclusion of direct review, including discretionary review in the Supreme Court of

the United States and the Supreme Court of Pennsylvania, or at the expiration of time for seeking

the review." Id. § 9545(b)(3). The finality of the conviction consideration is the same for second

and any subsequent PCRA petitions. Commonwealth v. Dehart, 730 A.2d 991, 993 (Pa.Super.

1999).

Here, Appellant's conviction became final on January 12, 2007, ninety days after the

Supreme Court of Pennsylvania denied *allocatur* and time to petition for certiorari with the US

Supreme Court expired. Appellant filed the instant *pro se* PCRA on May 29, 2015, more than

seven years after the conviction became final. His PCRA petition is facially untimely.

A PCRA petition however, may be filed after expiration of the timeliness requirement if

the Appellant alleges and proves one of the statutory exceptions. Prior October 24, 2018, a

petitioner must have filed the petition under an exception "within 60 days of the time the claim

could have been presented." Id. § 9545(b)(2) (Nov. 17, 1995). Post October 24, 2018, and

applied retroactively to claims on or before October 24, 2017, a petitioner must file the petition

under an exception "within one year of the date the claim could have been presented." Id. §

9545(b)(2) (Oct. 24, 2018).

4

Appellant received Moses' statement in April of 2015, therefore, the pre-amended statute applies. The statement was taken and notarized on April 3, 2015 and Appellant filed his pro se PCRA on May 27, 2015. There is a fifty-two day time period between the time the statement was taken and the PCRA petition was filed. Appellant's attorney mailed the opinion revealing Ty-Ron's mental illness and alleged recantation on April 14, 2015. That is a forty-one day period between the mailing and the filing of the *pro se* petition. Both time periods fit within the sixty day filing requirement of submitting a claim under a timeliness exception. Therefore, the PCRA petition is timely for consideration of whether the timeliness exception of section 9545(b)(2) (Nov. 17, 1995) applies.

Appellant relies on section 9545(b)(1)(ii). To raise a substantive after-discovered-facts claim by a facially untimely PCRA, the Appellant "must first establish jurisdiction by pleading and proving an exception to the PCRA time-bar." Commonwealth v. Brown, 111 A.3d 171, 179 (Pa.Super. 2015). Section 9545(b)(1)(ii) does not "require any merits analysis of the underlying [after-discovered-facts] claim." Commonwealth v. Bennet, 930 A.2d 1264, 1271 (2007) (clarification added). To establish jurisdiction pursuant section 9545(b)(1)(ii), a petitioner must allege and prove, "(1) the facts upon which the claim was predicated were unknown; and (2) could not have been ascertained by the exercise of due diligence.". Bennett, 930 A.2d at 1272 (internal emphasis omitted). "Due diligence demands that the petitioner take reasonable steps to protect his own interests." Brown, 111 A.3d at 176. "A petitioner must explain why he could not have learned the new fact(s) earlier with the exercise of due diligence. Id. "This rule is strictly enforced." Id. "Additionally, the focus of this exception 'is on the newly discovered facts, not on a newly discovered or newly willing source for previously known facts.'" Id. (quoting Commonwealth v. Marshall, 947 A.2d 714, 720 (2008)). However, "a claim which rests

5

exclusively upon inadmissible hearsay is not of a type that would implicate the after-discovered facts exception to the timeliness requirement." Commonwealth v. Yarris, 731 A.2d 581, 592 (1999). As such, Appellant's first claim fails.

I.   <u>Timothy Moses' Affidavit of Statement is based on inadmissible hearsay that does not avail itself of any hearsay exception which leaves this court without jurisdiction to hear this claim.</u>

Appellant's first contention is that the court erred in dismissing the Affidavit as newly and after discovered facts. To understand the court's decision, a summary of the Affidavit follows:

In the Affidavit, Moses alleges that he is a former member of the Brill Street Gang. He further alleges that two members of the gang, unrelated to the Appellant, were responsible for the robbery and murder of Brian Birkelback. According to Moses, the shooter was a man named "Stan" and Stan was accompanied by a man named "Jizz." Moses denies any involvement in the robbery and murder. He alleges that the murder was a result of mistaken identity; Stan mistook Birkelback for a man named "Chris," who owed Stan money from a previous drug deal. Jizz drove Stan to the location of the murder in his gold Grand Prix with tinted windows, the same vehicle described by the witnesses of the murder. Moses states that after the alleged shooting Stan and Jizz drove back to Brill Street and when Stan exited the vehicle he told Moses that he had "shot the wrong mothafucka." The following day Moses claims that "everybody was talking about [the shooting] so [he] went around Gilham Street and saw exactly what they was [sic] talking about." He further asserts that Stan is deceased and that he does not know Jizz's real identity. Timothy Moses Affidavit Of Statement at 1-2.

Moses' Affidavit makes three assertions: (1) Stan and Jizz were responsible for the murder and robbery of Brian Birkelback; (2) that Appellant was not at the scene of the crime;

6

and (3) Appellant was not affiliated with the individuals who committed the murder and robbery. Moses admits he was not an eyewitness to the murder, therefore, he lacks firsthand knowledge of the events that transpired the night of the murder and relies on secondhand information to recount what he alleges in his affidavit. Id. at 1. Appellant's first claim stems from a hearsay statement by Stan, an alleged former gang affiliate of Moses. According to Moses, sometime on the night of the shooting, Stan returned to Brill Street and after he exited the gold Grand Prix he confessed to Moses that he shot the wrong person. Moses allegedly remembers that night because members of the gang were supposed to go out to celebrate Stan's belated birthday at a bar. Id. at 2.

Hearsay is a statement a declarant made outside of "testifying at the current trial or hearing" and offered "in evidence to prove the truth of the matter asserted in the statement." Pa.R.E. 801. The declarant is the person who made the statement and a statement may be an oral or written assertion. Id. An affidavit is inadmissible hearsay when offered for its truth, unless it fits within a hearsay exception. Sprague v. Walter, 656 A.2d 890, 913 (Pa.Super. 1995).

Appellant argues that Stan's declaration when exiting the vehicle fits within Pa.R.E. 803(2) hearsay exception as an excited utterance. An excited utterance is "[a] statement relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused." Pa.R.E. 803(2). It is made "spontaneously and without opportunity for reflection." Commonwealth v. Boczkowski, 846 A.2d 75, 95 (2004). To establish an excited utterance, the proponent must show "first, that [the declarant] had witnessed an event sufficiently startling and so close in point of time as to render her reflective thought processes inoperable and, second, that [declarant's] declarations were a spontaneous reaction to that startling event." Commonwealth v. Stokes, 615 A.2d 704, 712 (1992) (quoting Commonwealth v. Green, 409 A.2d 371, 373-74

7

(1979)).

Here, Appellant has failed to establish that Stan's alleged statement to Moses was an excited utterance. The relevant part of Moses' statement, as it relates to Stan's alleged confession, is as follows: "I was there on Brill St [sic] right before they went around there [where the shooting occurred]. They drove Jizz gold Grand Prix tinted windows over there and when they came back Stan hopped out the car and said, "damn dog I just shot the wrong mothafucka." Moses Affidavit at 1. Moses' statement does not establish Stan's confession as an excited utterance. It is clear that a botched robbery and a murder can be deemed a "startling event or condition," however, nowhere in Moses' statement is there a showing that the confession was made "so close in time as to render [declarant's] reflective thought processes inoperable," or that the statement was a "spontaneous reaction to that startling event." Stokes, 615 A.2d at 712. Furthermore, Moses' statement makes no mention of the declarant's physical appearance or emotional state when he arrived to Brill street. The statement does not reveal how much time passed in between the shooting and Stan making the alleged confession. And ultimately, there is no showing that the statement was a "spontaneous reaction" to the murder. Stan's confession is not admissible hearsay based on the excited utterance exception[1].

Since Stan's alleged confession is inadmissible hearsay and does not avail itself of any hearsay exception it would not implicate section 9545(b)(1)(ii), exception to the PCRA timeliness requirement, and the court would lack jurisdiction to address this claim.

II.  Appellant's *Brady* claim that Ty-Ron Rouse's undisclosed mental health issues were mental health impeachment evidence is without merit.

Appellant's *Brady* claim is timely raised under section 9545(b)(1)(ii) newly discovered

---

1 The Affidavit does not provide an address, telephone, or any other contact information for Stan. The Affidavit also does not explain the extent of his relationship with Stan or Jizz, aside from the fact that they used to be part of the same alleged gang.

8

facts exception as he has shown that the facts upon which the claim was predicated were unknown and could not have been ascertained by the exercise of due diligence[2]. Therefore the court has jurisdiction to address the substance of Appellant's *Brady* claim.

To establish a *Brady* claim, the Appellant must "establish that the evidence withheld was favorable to him, i.e., that it was exculpatory or had impeachment value; the evidence was suppressed by the prosecution; and prejudice resulted." Commonwealth v. Miller, 987 A.2d 638, 655 (2009). Prejudice is established with a showing that "evidence in question was material to guilt or punishment, and that there is a reasonable probability that the result of the proceeding would have been different but for the alleged suppression of the evidence." Id. (quoting Commonwealth v. James Dennis, 950 A.2d 945, 966 (2008) (internal citations and quotation marks omitted)). "The mere *possibility* that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish materiality in the constitutional sense." Id. (quoting Commonwealth v. Chambers, 807 A.2d 872, 887 (2002)). The Appellant will fail to establish a *Brady* claim if he "either knew of the existence of the evidence in dispute or could have discovered it by exercising reasonable diligence." Id.

Ty-Ron is Appellant's co-defendant, Devin's cousin. Ty-Ron was in custody on an unrelated matter when he told police that Devin confided in him that he had committed the Birkelback robbery with two other people. Devin filed a PCRA petition to which the PCRA court filed an opinion granting a new trial. An issue that Devin raised in that petition was that the Commonwealth failed to disclose that Ty-Ron "had been suffering from severe mental health problems" when acting as a Commonwealth witness for the trial. Devin subsequently dropped

---

2 Appellant pled and it was uncontested that Appellant had not previously known about Ty-Ron's mental health issues and that he did not receive this information until his previous attorney, Norris Gelman, sent him a copy of Devin Rouse's PCRA opinion. After he received the opinion, Appellant filed a PCRA petition claiming a timeliness exception.

9

this claim because he was unsuccessful in locating Ty-Ron for the hearing. The court's opinion did not reveal the type or severity of mental health problem that Ty-Ron may have been suffering at that time, or whether it affected his ability to perceive or recall events accurately. Commonwealth v. Rouse, PCRA Court Opinion, 3020 EDA 2014, at 3-8.

Mental health disabilities on their own are not relevant or admissible to impeach a witness's credibility unless they "impair a witness's ability to observe, recall, or report events." Commonwealth v. Miller, 212 A.3d 1114, 1125 (Pa.Super. 2018) (quoting Commonwealth v. Davido, 106 A.3d 611, 637 (2014)). The Commonwealth is not required by *Brady* to disclose mental health records that do not possess mental health impeachment evidence. Id. at 1125-26.

Appellant asserts that Devin's PCRA opinion revealed impeachable evidence concerning Ty-Ron Rouse, who was an important Commonwealth witness in Appellant's trial. Appellant has failed to support his assertion that Ty-Ron's "severe mental health problem" was the kind of impeachable mental health evidence that would trigger *Brady*. Appellant asserts that simply because Ty-Ron had mental health problems that it is on its own impeachable evidence. This assertion lacks merit. The *Devin* opinion does not reveal whether Ty-Ron's mental health issue affected his "ability to observe, recall, or report events." In fact, it is an issue that court did not address or investigate because it is a claim Devin dropped when he was unable to locate his cousin, Ty-Ron, to testify at his PCRA hearing. Nothing on the record, and nothing that the Appellant provided, indicates the Ty-Ron's mental health problem was of the sort that would trigger *Brady*. As such, Appellant has failed to show that Ty-Ron's mental health problem had impeachable value and his *Brady* claim must fail because it lacks merit.

III.    Ty-Ron Rouse's undisclosed mental health issue is not newly and after discovered facts.

Appellant's claim is timely for consideration pursuant section 9545(b)(1)(ii), for the same

10

facts as the *Brady* claim[3], meaning this court has jurisdiction to consider the substance of this claim.

In order to meet the timeliness exception of the PCRA as after-discovered facts, Appellant must demonstrate that the facts:

> (1) could not have been obtained prior to the conclusion of the trial by the exercise of reasonable diligence; (2) is not merely corroborative or cumulative; (3) will not be used solely to impeach the credibility of a witness; and (4) would likely result in a different verdict if a new trial were granted."

Commonwealth v. Pagan, 950 A.2d 270, 292 (2008).

The test is conjunctive and Appellant must satisfy each element of the exception. Id. at 293. Appellant's claim fails this burden.

While Appellant has shown that these facts could not have been obtained prior to the conclusion of trial by exercise of due diligence and that it is not merely corroborative or cumulative, he fails to meet the two additional elements. Appellant, through counsel, argued at the PCRA hearing on June 26, 2019, that "the mental health evidence could be used as impeachment evidence about [Ty-Ron's] ability to perceive and tell the truth." N.T., 6/26/2019, at 6. This clearly demonstrates that the mental health report would be used solely to impeach the credibility of the witness. Therefore, this evidence fails to meet the requirements of being after-discovered facts pursuant the timeliness exception of the PCRA.

IV.     Ty-Ron Rouse's recantation is not newly and after discovered facts.

Appellant's claim is timely pursuant section 9545(b)(1)(ii), for the same facts as the

---

3 *Infra*, note 2.

11

previous claims[4], meaning this court has jurisdiction to evaluate the merit of this claim.

Appellant's assertion that Ty-Ron's "recantation" would entitle him to PCRA relief is misguided. Appellant claims that Devin's PCRA opinion revealed evidence that Ty-Ron recanted his statement in the case against Devin Rouse. That assertion is not supported by the Devin Rouse PCRA opinion. According to the PCRA opinion, the first time Devin raised the issue of Ty-Ron's "recantation" was on November 30, 2010, in his "Petition to Remand to Augment PCRA Record and for Hearing Regarding After-Discovered Evidence." In that petition, among other issues, Devin claimed that Ty-Ron had signed a false statement to deflect blame from himself. The Superior Court denied this petition but permitted him to raise new issues in his appellate brief. On November 21, 2011, the Superior Court, subsequently, vacated the PCRA court's order denying Devin's petition and ordered an evidentiary hearing on the new claims of ineffectiveness of counsel and after-discovered facts. On March 9, 2012, Devin filed an amended PCRA petition, where he again claimed, among other issues, that Ty-Ron gave false testimony. On January 27, 2014, an evidentiary hearing was held to address Devin's claims but the court did not address the false testimony claim. Devin's PCRA petition for relief was granted on the issue of ineffectiveness of counsel to preserve and present Appellee's due process claim. PCRA Court Opinion, 3020 EDA 2014, at 6-8.

Following the elements of the after-discovered facts test, the Appellant has failed to establish that Ty-Ron's recantation would pass the test. It is uncontested that Appellant could not have obtained this evidence prior to conclusion of trial or with the exercise of due diligence. Appellant, however, has not established that this evidence is not cumulative or corroborative of his assertion that he is innocent. He has not established that this evidence is not solely for

---

4 *Infra*, note 2. Devin Rouse's PCRA opinion also revealed that along with Ty-Ron's mental health nondisclosure issue, he also alleged that "Ty-Ron had signed a false statement in an attempt to deflect blame from himself."

12

impeachment of Ty-Ron's credibility. Most importantly, Appellant has not shown that this recantation would result in a different verdict if a new trial was granted, in light of the fact that at the June 26, 2019 PCRA hearing, the Commonwealth revealed that Ty-Ron had recanted his recantation and re-adopted his previous testimony. N.T., 6/26/19, at 11-12.

Ty-Ron's recantation would not constitute newly and after-discovered facts requirements of the PCRA. As such, this claim is untimely and without merit.

V.      Regardless of the merit of the claims, Appellant is not entitled to an evidentiary hearing.

A PCRA court in not required to grant a PCRA Appellant an evidentiary hearing to develop a factual basis for his claims. Commonwealth v. Maddrey, 205 A.2d 323, 328 (Pa.Super. 2019). "It is well settled that there is no absolute right to an evidentiary hearing on a PCRA petition, and if the PCRA court can determine from the record that no genuine issues of material fact exist, then a hearing is not necessary." Id. (quoting Commonwealth v. Jones, 942 A.2d 903, 906 (Pa.Super. 2008)) (internal brackets and quotation marks omitted). "To obtain reversal of a PCRA court's decision to dismiss a petition without a hearing, an appellant must show that he raised a genuine issue of fact which, if resolved in his favor, would have entitled him to relief, or that the court otherwise abused its discretion in denying a hearing." Id. (quoting Commonwealth v. Hanible, 30 A.3d 426, 452 (2011).

At the June 26, 2019, PCRA hearing Appellant, through counsel, requested an evidentiary hearing to flesh out "factual issues as to whether [Stan's confession] is an excited utterance." N.T., 6/26/19, at 5. Appellant further claims that the court erred in dismissing his PCRA petition, in whole, without an evidentiary hearing. As stated above, Appellant is not entitled to an evidentiary hearing, as this court determined for reasons set forth above that no genuine issue of material facts existed in determining the merits of Appellant's claims. As such,

13

the court dismissed Appellant's petition without an evidentiary hearing having determined that Moses' Affidavit of Statement was outside of the court's jurisdiction and the other claims were untimely, having failed to establish newly and after discovered facts.

Appellant was not entitled to an evidentiary hearing.

## CONCLUSION

Based on the foregoing analysis, denial of the PCRA petition should be affirmed.

BY THE COURT:

Ransom, J.